IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR585 |
| | ) | 1:23CR591 |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| BRIAN LUMBUS, JR., aka B, | ) | GOVERNMENT'S TRIAL BRIEF |
| KEVIN MORRIS | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Colleen Egan and James P. Lewis, Assistant United States Attorneys, respectfully submit this trial brief.

## I. SUMMARY OF GOVERNMENT'S EVIDENCE

In approximately October 2022, an investigator with the Ohio Penitentiary learned that Defendant Brian Lumbus, Jr. was operating an international and interstate drug trafficking organization ("DTO") while incarcerated there as an inmate. Ohio State Highway Patrol ("OHSP") began investigating Lumbus, and obtained jail phone calls and emails involving Lumbus and other coconspirators. The communications showed that Lumbus's DTO imported controlled substances from a supplier, Giancarlo Miserotti, in Italy, intended for redistribution in Ohio and other states. In emails, conspirators talked openly and sent photos of the narcotics. In calls, the conspirators used colors to refer to narcotics, and talked openly about the DTO's activities. Many of those calls and emails are set forth in the indictment.

Defendant Kevin Morris assisted Lumbus with his drug trafficking by mixing drugs received from the mail or other coconspirators, and by packaging those newly-manufactured

drugs for distribution. Morris also sprayed sheets of paper with controlled substances to be shipped to prisons, in coordination with Lumbus and others.

As one example, on or about October 5, 2022, at approximately 6:12 p.m., Brian Lumbus, Brianna Lumbus, Kevin Morris, and Giancarlo Miserotti speak in a four-way call on a recorded jail line. During this conversation, they discuss mixing more acetone with the drugs. Miserotti tells the others, "I just spoke to the guy…he says you have to put more acetone…the color is good but you're using too much powder." Conversations continue to occur between Brian Lumbus, Brianna Lumbus (who is with Morris while Morris mixes the drugs), and other conspirators throughout the evening of October 5, 2022. During those conversations, the conspirators continue to discuss ratios for mixtures, and Morris and Brianna Lumbus describe what the illegal drug mixture is doing. At one point around 6:23 p.m., Morris states, "It's falling to the bottom…it's extracting to change the color but it's still falling straight to the bottom like sand [referring to the drug mixture]." This is just one example of numerous recorded communications involving Lumbus, Morris, and others.

On October 12, 2023, federal investigators executed a search warrant at Morris's residence. Upon executing the warrant, investigators located a backpack in the basement, which Morris had control over. Inside of the backpack, the following items were located:

84.5 grams of 100% pure methamphetamine;

270.41 grams fentanyl;

a SCCY, 9 millimeter handgun, bearing serial number C121488; and

FN-57 handgun, bearing serial number 386274525;

Morris had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and was therefore prohibited from possessing a firearm under federal law.

Moris was *Mirandized* and interviewed. Morris stated there was fentanyl and two guns in a backpack in the basement, which belonged to him. Morris also stated he bought the guns off the street, and that he had the guns because people do "dumb s**t." The October 12th search warrant forms the basis of the charges in Morris's second superseding indictment.

During the investigation into Lumbus's DTO, investigators seized a number of drug parcels that Lumbus and his coconspirators were responsible for shipping and/or receiving. Those seizures form the basis for Counts 2 through 7 of Lumbus's indictment. Count 8 charges interstate travel in aid of racketeering, based on the conspirators' use of the mail to ship drug parcels. Count 9 charges an international money laundering conspiracy, based on payments conspirators made to Miserotti or others in Italy for the drugs. And Counts 10 through 34 charge Use of a Communications Facility to Facilitate a Felony Drug Offense, based on particular communications conspirators had about the drug conspiracy.

## II. <u>Legal and Trial Issues</u>

### a. The jury should be permitted to hear that Lumbus was an Ohio inmate during the timeframe of the conspiracy.

A central part of the government's case will be the recorded jail calls and emails Lumbus engaged in while he was an inmate at an Ohio prison. In order to explain the nature of the evidence in this case, the jury will need to hear that Lumbus was an inmate serving a sentence during this time period.[1] As such, evidence that Lumbus was incarcerated as an Ohio prisoner is relevant under Federal Rule of Evidence 401, and is not excludable under Federal Rule of Evidence 403's balancing test. *See Baugh v. United States*, No. 3:16-CV-02628, 2020 WL

[1] The government does not intend to introduce evidence about what Lumbus's underlying convictions were, unless defense counsel opens the door. If the government believes that occurred, it will ask to address the Court at a side bar.

409728, at *10 (M.D. Tenn. Jan. 24, 2020) (rejecting a Rule 403 claim that the probative value of evidence about defendant's incarceration was substantially outweighed by the risk of unfair prejudice, because "[m]uch of the evidence against Baugh consisted of prison telephone calls, and the fact that he was incarcerated was the only way to identify him as the person involved in these phone calls").

**b. <u>Defendants should not be permitted to offer their own-self serving statements from recorded jail calls or emails.</u>**

As discussed above, the government intends to introduce recorded jail call and email statements made by Lumbus, Morris, and other coconspirators under Federal Rule of Evidence 801(d)(2) (party-opponent statements, including coconspirator statements). Party-opponent statements are a one-way street, however, meaning that the defendants may not use 801(d)(2) as a vehicle for introducing their own self-serving statements. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (upholding district court's in limine ruling that defendant could not elicit his own post-arrest statements during cross-examination of INS agent).

Relatedly, the Court should require the defendants to raise any rule of completeness issues in limine. Federal Rule of Evidence 106, which codifies the common law "rule of completeness," provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. In applying this rule, the district court must determine:

> (1) whether the additional evidence explains the evidence already admitted; (2) whether it places the admitted evidence in its proper context; (3) whether its admission will serve to avoid misleading the trier of fact; and (4) whether its admission will insure a fair and impartial understanding of all of the evidence.

*United States v. Dotson*, 715 F.3d 576, 582 (6th Cir. 2013) (quoting *United States v. McAllister*, 693 F.3d 572, 584 (6th Cir. 2012)). Importantly, "the rule of completeness does not make inadmissible evidence admissible" and it is limited by "the qualification that the portion sought to be admitted be relevant to the issue, and only those parts which qualify or explain the subject matter of the portion offered by opposing counsel should be admitted." *Dotson*, 715 F.3d at 582 (internal citations omitted).

Here, the government's exhibit list will identify the specific recorded communications it intends to offer at trial. In order to avoid lengthy side bars during trial, the Court should require the defendants to raise any rule of completeness issues in limine, so those issues can be decided outside of the jury's presence before trial.

**c. <u>Stipulations</u>**

The government has proposed stipulations to drug chemist testimony, the interstate nexus of the firearms Morris is charged with possessing, and Morris having a prior felony conviction.

At this time, the government anticipates Morris will stipulate to the interstate nexus of the firearms and to his prior felony conviction for purposes of Count 1 of the second superseding indictment in his case. No stipulations have been reached with either defendant regarding drug chemist testimony.

**d. <u>Expert Testimony</u>**

Unless there is a stipulation to drug chemist testimony, the government anticipates calling the drug chemists who conducted the drug chemistry analysis in this case as expert witnesses. Their reports were provided in discovery. The government also anticipates calling its case agent, DEA Task Force Officer Adam Anderson, as an expert in the field of drug trafficking, to provide testimony about street prices of drugs, coded language used by the coconspirators during

recorded communications, and other topics involving the manner and means of drug trafficking. The government is providing a Rule 16 expert disclosure to defense counsel for TFO Anderson.

**e. Length of Trial**

The government anticipates its case-in-chief will take approximately two to three weeks.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ James P. Lewis

James P. Lewis (MD: 1412170148)
Colleen Egan (OH: 0083961)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3958 / 3758
(216) 522-7499 (facsimile)
James.Lewis@usdoj.gov
Colleen.Egan@usdoj.gov