IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN LUMBUS, JR., aka B,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:23CR585<br><br>JUDGE DAVID A. RUIZ<br><br>**DEFENDANT BRIAN LUMBUS, JR.'S TRIAL BRIEF** |

---

Defendant Brian Lumbus, Jr., by and through undersigned counsel, respectfully submits this trial brief pursuant to the Court's trial order.

## I. STATEMENT OF FACTS

Mr. Lumbus is charged in a thirty-four count indictment. Count 1 alleges a conspiracy to possess with intent to distribute and to distribute mixtures and substances containing fentanyl, isotonitazene, metonitazene, alpha-PiHP, and ADB-BUTINACA, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 846, beginning on or about April 28, 2016 and continuing through on or about November 1, 2023. Ten other individuals are named in that count. Counts 2, 3, 5, 6, and 7 charge possession with intent to distribute on discrete dates between October 2022 and February 2023, involving, respectively, fentanyl; fluorofentanyl and methamphetamine; ADB-BUTINACA; buprenorphine and naloxone; and N-cyclohexyl methylone, alpha-PiHP, and fentanyl. Count 4 charges an attempted possession with intent to distribute alpha-PiHP on or about January 10, 2023. Count 8 charges interstate travel in aid of racketeering under 18 U.S.C. § 1952. Count 9 charges a conspiracy to commit international money laundering under 18 U.S.C. § 1956(h), predicated on § 1956(a)(2)(B)(i). Counts 10 through 34 charge use of a

communication facility to facilitate a felony drug offense under 21 U.S.C. § 843(b), each tied to a particular dated communication. Trial is set for October 26, 2026. Mr. Lumbus will be tried together with Kevin Morris, who is separately indicted in Case No. 1:23CR591; of the individuals named in Count 1, Mr. Lumbus is the only one proceeding to trial.

The government's theory, as described in its trial brief, is that Mr. Lumbus directed a drug trafficking organization from within an Ohio correctional institution; that the organization obtained controlled substances from a supplier abroad; that others received, processed, and redistributed those substances; and that recorded institutional calls and email messages, together with seized parcels and the forensic analysis of their contents, establish his participation. The government intends to prove that theory principally through recorded communications, the testimony of a case agent offered as an expert in drug trafficking, forensic chemists, and the parcels and their contents.

Mr. Lumbus does not adopt that account, and nothing in this brief should be read as agreeing to any part of it. He has pleaded not guilty to every count and will hold the government to its proof. The matters genuinely in dispute include whether the evidence establishes the single agreement alleged in Count 1 or instead several distinct and unconnected ones; when, if ever, Mr. Lumbus joined any such agreement and what its scope was; whether he knew that the substances at issue were controlled substances at the time of the charged conduct; the identity, composition, scheduling status, and quantity of the substances attributed to him, including material identified only in residue form, material not separately tested, and material seized from other people on other dates and in other places; whether he possessed, actually or constructively, the contents of parcels he is not alleged to have handled; whether he was aware of the interstate

character of any mailing; and whether any transfer of funds abroad was designed for the purpose of concealment. The government bears the burden on each of those matters.

## II. CONTROLLING LAW

### a. Burden of proof and separate consideration.

The government must prove every element of every count beyond a reasonable doubt, and Mr. Lumbus bears no burden to present evidence or to prove anything. *In re Winship*, 397 U.S. 358, 364 (1970); Sixth Circuit Pattern Criminal Jury Instructions § 1.03 (2026 ed.). Because Mr. Lumbus faces thirty-four counts and will be tried alongside a separately indicted defendant, the evidence must be weighed separately as to each count and each defendant, and a finding on one may not be carried to another. Pattern Instruction § 2.01C. Given the volume of proof in this case that concerns persons other than Mr. Lumbus, the defense will ask that this principle be stated at the outset of trial as well as in the final charge.

### b. Count 1: conspiracy under 21 U.S.C. § 846.

The government must prove an agreement to violate the drug laws, Mr. Lumbus's knowledge of and intent to join that agreement, and his participation in it. *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009); *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999). No overt act need be proved. *United States v. Shabani*, 513 U.S. 10, 15 (1994). But the agreement itself must be proved, and proof that a defendant knew of a conspiracy, was present while others acted, associated with its members, or did something that happened to assist it does not establish membership. *Gibbs*, 182 F.3d at 421-22. A buyer-seller relationship, standing alone, is likewise insufficient. *United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996).

Where the proof establishes multiple separate agreements rather than the single overarching agreement charged, the result is a variance, and reversal follows where substantial

rights are affected. *Kotteakos v. United States*, 328 U.S. 750, 773-74 (1946); *United States v. Warman*, 578 F.3d 320, 332 (6th Cir. 2009); *United States v. Caver*, 470 F.3d 220, 236 (6th Cir. 2006). Count 1 alleges one agreement spanning more than seven years, eleven named participants, five controlled substances, and seizures in several states arising from unrelated investigative events. Whether that is one conspiracy or several is a question for the jury.

Finally, the drug type and quantity that trigger the enhanced penalties of § 841(b)(1)(B) are elements rather than sentencing factors and must be found by the jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 103 (2013). In a conspiracy prosecution that finding must be made as to this defendant, reflecting the quantity within the scope of the agreement he joined and reasonably foreseeable to him, rather than the quantity attributable to the alleged organization at large. The proposed instructions already contemplate a special unanimity finding on quantity, and the defense will ask that the verdict form require it.

**c. The knowledge element common to the controlled substance counts.**

Every drug count in the indictment requires proof that Mr. Lumbus knew he was dealing with a controlled substance. *McFadden v. United States*, 576 U.S. 186, 192 (2015). That element may be satisfied by proof that he knew the identity of the substance he handled, or by proof that he knew the substance was controlled under federal law even without knowing which substance it was. *Id.* at 192, 194. What the government may not do is substitute proof that the substances were in fact controlled for proof that Mr. Lumbus knew they were. Several of the compounds named in the indictment are novel substances whose regulatory status at the relevant time is not self-evident, and the record contains evidence bearing directly on what Mr. Lumbus was told about them and understood them to be. This element is the central contested issue in the case.

**d. Counts 2, 3, 5, 6, and 7: possession with intent to distribute.**

These counts require proof that Mr. Lumbus knowingly and intentionally possessed the substance charged and that he intended to distribute it. Pattern Instruction § 14.01. Possession may be actual or constructive, but constructive possession requires proof of dominion and control over the substance, or over the premises in which it is found, together with knowledge of its presence and the intent to exercise that control. Mere proximity, mere presence, and association with a person who possesses are not enough. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973); Pattern Instructions §§ 2.10, 2.11. Several of these counts rest on parcels mailed or received by other people. The government will therefore need to prove Mr. Lumbus's dominion and control over contents he is not alleged to have physically handled, and his knowledge of what those contents were.

To the extent these counts are submitted on an aiding and abetting theory under 18 U.S.C. § 2, the government must prove that the underlying offense was committed, that Mr. Lumbus did something to help or encourage its commission, and that he intended to do so. Pattern Instruction § 4.01. Knowledge of the offense, even coupled with presence, does not suffice.

**e. Count 4: attempted possession with intent to distribute.**

An attempt requires proof of the intent to commit the completed offense and of an overt act constituting a substantial step toward its commission; mere preparation is not a substantial step. Pattern Instruction § 5.01. Because Count 4 is pleaded as an attempt to possess alpha-PiHP, the government must prove that Mr. Lumbus intended to possess that substance knowing it to be controlled, and that he took conduct strongly corroborative of that intent.

**f. Count 8: interstate travel in aid of racketeering.**

Section 1952(a)(3) requires proof that the defendant used the mail or a facility in interstate or foreign commerce, that he did so with the intent to promote, manage, establish, carry on, or facilitate an unlawful activity, and that he thereafter performed or attempted to perform an act in furtherance of that activity. The term "unlawful activity" is defined by § 1952(b)(1) to require a business enterprise involving narcotics, which is to say a continuous course of conduct rather than a casual or sporadic transaction. The Sixth Circuit has further required proof that the defendant was aware of the interstate character of the activity. *United States v. Gallo*, 763 F.2d 1504, 1521 (6th Cir. 1985).

**g. Count 9: international money laundering conspiracy.**

Count 9 charges a conspiracy under 18 U.S.C. § 1956(h) to violate § 1956(a)(2)(B)(i). The object offense requires proof that funds were transported, transmitted, or transferred from a place in the United States to a place outside it, that the defendant knew the funds represented the proceeds of unlawful activity, and that he knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of those proceeds. The concealment requirement is a purpose element, not an effect element. *Cuellar v. United States*, 553 U.S. 550, 563-68 (2008). Evidence that funds were moved quietly, or that the movement had the incidental consequence of hiding them, does not establish that the transportation was designed for the purpose of concealing the attributes the statute enumerates. *Id.* at 566-68.

**h. Counts 10 through 34: use of a communication facility.**

Section 843(b) requires proof that the defendant knowingly used a communication facility and that he did so with the intent to facilitate the commission of a felony drug offense. *United States v. Burns*, 298 F.3d 523, 538 (6th Cir. 2002). Each of these twenty-five counts is a

separate offense resting on a separate dated communication, and each requires separate proof and separate unanimity. Because liability under § 843(b) is derivative of an underlying felony drug offense, a failure of proof on the predicate is a failure of proof on these counts as well.

## III. EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL

### a. Evidence of Mr. Lumbus's incarceration should be limited, sanitized, and accompanied by a limiting instruction.

The defense does not dispute that the jury will necessarily learn that the recorded calls and messages at the center of the government's case originated from a correctional institution. The defense does dispute that this permits the government to make Mr. Lumbus's status as a sentenced state prisoner known. Rule 403 weighing accounts for the evidentiary alternatives available to the proponent; where a less prejudicial route to the same proposition exists, the incremental probative value of the more prejudicial route is discounted accordingly. *Old Chief v. United States*, 519 U.S. 172, 182-85 (1997). The authority the government offers is an unreported habeas decision from another district, which is neither binding here nor addressed to the scope question the defense raises.

The defense asks that the Court admit this evidence only to the extent necessary to authenticate and explain the recordings; that the government and its witnesses refer to the facility neutrally and refrain from eliciting the length or nature of Mr. Lumbus's sentence, his security classification, or his institutional history; and that a limiting instruction be given when the evidence is first offered and repeated in the final charge. The defense accepts the government's representation that it will not introduce the underlying convictions, and asks that any claim the door has been opened be raised at sidebar before the subject is broached.

**b. The request to foreclose Mr. Lumbus's own recorded statements is premature and rests on a superseded version of Rule 106.**

The government asks the Court to bar the defendants from offering their own recorded statements. That request sweeps more broadly than the law permits, for three reasons.

First, Rule 801(d)(2) is not the only route by which a defendant's recorded words become admissible. A statement offered for something other than the truth of the matter asserted is not hearsay at all, Fed. R. Evid. 801(c)(2), and a statement of the declarant's then-existing state of mind is admissible without regard to which party offers it, Fed. R. Evid. 803(3). Where the defendant's knowledge is the disputed element, contemporaneous statements bearing on what he understood are not self-serving in the sense the government's out-of-circuit authority uses that term. They are substantive evidence on a contested element, and the government cannot both place Mr. Lumbus's state of mind at issue and foreclose the evidence most directly probative of it.

Second, the government's completeness discussion quotes the pre-amendment text of Rule 106 and relies on *United States v. Dotson*, 715 F.3d 576 (6th Cir. 2013), for the proposition that the rule does not render inadmissible evidence admissible. That proposition no longer states the rule. Effective December 1, 2023, Rule 106 provides that the adverse party may require introduction of the completing portion over a hearsay objection, and the rule now reaches unrecorded oral statements as well. Fed. R. Evid. 106 and advisory committee's note to the 2023 amendment. The four-factor inquiry *Dotson* describes remains useful; its hearsay limitation does not survive the amendment.

Third, the defense does not object in principle to litigating completeness before trial rather than at sidebar. The sequencing, however, must be workable. The defense cannot

designate completing portions until the government identifies with specificity which calls, messages, and segments it intends to offer, in what form, and with what transcripts. The defense therefore asks that any order setting a deadline for completeness motions be conditioned on the government's production of its final exhibit list, recording designations, and transcripts a reasonable period beforehand.

**c. Coconspirator statements require preliminary findings on the record.**

Statements offered under Rule 801(d)(2)(E) are admissible only upon a preliminary finding, by a preponderance, that a conspiracy existed, that the declarant and the defendant were members of it, and that the statement was made during and in furtherance of it. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). The defense requests that the Court make those findings on the record in accordance with the procedures described in *United States v. Vinson*, 606 F.2d 149, 152-53 (6th Cir. 1979). Given the breadth of the conspiracy alleged, the defense preserves its objection to statements falling outside the scope or duration of whatever agreement the evidence establishes, including statements predating Mr. Lumbus's alleged entry and statements made after any withdrawal or termination, and to statements by declarants shown to belong to a different agreement than the one charged.

**d. Drug chemistry, scheduling, and quantity; stipulations.**

Mr. Lumbus has not stipulated to drug chemistry testimony and does not anticipate doing so. The identity, composition, and controlled status of each charged substance, and the quantity properly attributable to him, are elements the government must prove beyond a reasonable doubt. The defense reserves its objections under Rules 702 and 703 to opinions concerning scheduling status, isomeric classification, and the identity of material characterized as residue or not

separately tested, and it will contest any effort to extrapolate the composition of untested material from the analysis of a different exhibit. The defense remains willing to discuss stipulations that would streamline genuinely undisputed foundational matters, such as chain of custody for particular exhibits and the authentication of business records, and asks that any such discussions be completed before trial so that witness scheduling can be planned.

**e. Expert testimony by the case agent.**

The defense reserves its objections under Rules 702, 703, and 403 pending review of the government's Rule 16 disclosure for TFO Adam Anderson. Two concerns are identified now so that they may be resolved before the testimony is offered rather than in front of the jury.

The first is the dual-role problem. When a case agent testifies both as a fact witness and as an expert, the Sixth Circuit requires that the roles be kept distinct, that the jury be cautioned about the difference between them, and that any expert opinion rest on a disclosed and reliable methodology rather than on the investigative file. *United States v. Freeman*, 730 F.3d 590, 595-97 (6th Cir. 2013); *United States v. Lopez-Medina*, 461 F.3d 724, 743-45 (6th Cir. 2006); *United States v. Johnson*, 488 F.3d 690, 697-98 (6th Cir. 2007); *see also* Pattern Instruction § 34 (witnesses testifying to both facts and opinions).

The second is the scope of code-word interpretation. An agent qualified by experience may explain genuinely coded or ambiguous terminology, but he may not narrate recordings for the jury, translate language that is not in fact coded, or opine on what a defendant knew or intended. *Freeman*, 730 F.3d at 596-97. Because the recorded communications are the center of this case and because knowledge is the central disputed element, the line between permissible explanation and impermissible interpretation will recur throughout the trial. The defense asks that these limits be addressed and reflected in the Court's instructions.

**f. Transcripts and summaries.**

The government's recorded communications will be presented to the jury with transcripts. Transcripts are aids to listening and are not themselves evidence unless separately admitted; where a recording and a transcript differ, the recording controls. Pattern Instruction § 7.17. The defense asks that the parties confer on transcript accuracy and speaker identification before trial and that disputes be resolved outside the jury's presence. To the extent the government offers charts or summaries under Rule 1006, the defense asks that the underlying material and the proposed summaries be produced in advance so that accuracy and foundation can be addressed before the exhibits are shown to the jury, and that any summary not admitted in evidence be identified as such. Pattern Instructions §§ 38, 39.

## IV. LENGTH OF TRIAL AND RESERVATION

The defense does not dispute the government's estimate of two to three weeks for its case-in-chief, though cross-examination in a case built on recorded communications and forensic chemistry is likely to be substantial. Whether Mr. Lumbus will present evidence is a decision reserved until the close of the government's case, and he will move for a judgment of acquittal under Rule 29 at the appropriate times.

This brief is submitted on the record as it exists on the date of filing, and discovery and expert disclosures remain outstanding. The defense reserves the right to file motions in limine, to seek leave where a deadline has passed and good cause exists, to supplement the positions stated here, and to object at trial on grounds not identified in this filing. Nothing in this brief concedes any fact or element or waives any objection available to Mr. Lumbus.

Respectfully submitted,

/s/ Marcus Sidoti

Marcus Sidoti 0077476
Attorney for Defendant
FG+G
50 Public Square, Suite 1900
Cleveland, Ohio 44113
P: 216-241-1430
F: 216-357-3305
marcus@fggfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: 9/16/26

Respectfully submitted,

/s/ Marcus Sidoti

Marcus Sidoti 0077476
Attorney for Defendant
FG+G
50 Public Square, Suite 1900
Cleveland, Ohio 44113
P: 216-241-1430
F: 216-357-3305
marcus@fggfirm.com